JOHN G. FELDES

v.

JAMES P. DUNCAN.

*Homestead — Abandonment — Attachment — Trespass — Damages —Instructions—Error without Injury.*

1. The holder of any possessory interest in lands, without regard to the extent of such title, is entitled to an estate of homestead therein.

2. The appellant can not complain of an error which worked him no injury.

3. In an action of trespass brought to recover damages for the tearing down and conversion of a dwelling-house claimed as a homestead, this court holds: That the question of abandonment was for the jury, the evidence being conflicting; that the verdict is not excessive; and that there is no error in the instructions.

[Opinion filed December 8, 1888.]

APPEAL from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. HALL & HASKINS and DUNCAN, O'CONNOR & GILBERT, for appellant.

We insist that the evidence shows a complete abandonment at the time of levy and sale; and if that be so, then no matter what he now claims to have been his intention, our levy and sale were valid, and no recovery can be had. In order to entitle appellee to recover, it must appear that the removal was temporary in its nature, made for a specific purpose, with the intention of re-occupying the premises. Thompson on Homesteads and Exemptions, Sec. 284.

The intention of re-occupying the premises must be shown to have existed at the time of the levy and sale. The levy was made in October, 1885, and if such intention did not then exist, although before that time it did exist, no recovery can be had. By the language of the statute, three things must concur in the creation of a homestead estate: First, the

householder; second, he must have a family; and, third, the premises must be occupied as a residence.

If either of these requisites is wanting, the law will not create the estate of homestead.

A person owning a dwelling-house that is capable of being occupied for that purpose is, in the sense of the statute, a householder.

The section of the homestead act in question is Section 1, Chapter 52, R. S. Illinois, which provides that "every householder having a family shall be entitled to an estate of homestead in the farm or lot of lands and buildings thereon, owned or lawfully possessed, by lease or otherwise, and occupied by him or her as a homestead," etc.

The manifest intention of this section is that the householder must not only own the building, but must have some interest in possession, by lease or otherwise, in the farm or lot of land on which the building is situated, or else the homestead estate can not obtain. The simple fact that appellee left a few pieces of old furniture in the house was not a retention of the premises as a homestead, and gave him no right to return and occupy it as such. Especially is this true when, as in this case, the priests of the congregation of the mission had entered upon and taken possession of the premises from appellee and other sub-lessees of the Caledonia Coal Co., and re-rented said premises to other parties. The testimony of Rev. Felix Guedry, president of the priests of the congregation of the mission, who were the owners of this tract of land, is not denied by appellee Duncan or by any witness in the case, and must be taken as true. He testifies: "We, the priests of the mission, were exercising acts of ownership and acts of possession over the property upon which that house was located in September and October, 1885; we had perfect control of the property. We rented the land for the purpose of pasturing."

It was during this time that appellant levied upon and sold the house, and during the time appellee Duncan himself makes no claim of an interest in possession to any portion of this tract of land. On page 16 of record he admits that he does not

know who was in possession of this tract of land in 1885. This is entirely inconsistent with any claim of possession in himself.

Whatever right appellee had to the possession of the premises on which this house was situated, either by lease or otherwise, from 1881 to 1884, he lost when he moved out of the possession thereof in December, 1884.

How could he have any possessory right or interest therein, by lease or otherwise, on which to base a claim of homestead, when the owners of the fee had taken possession of the premises from the Caledonia Coal Company, to whom they had leased it, and its sub-lessees, among which was himself, and had rented it out to other parties, who were in the actual possession of this very tract of land when the writ of attachment in this case was levied upon this house? If appellee had remained in the actual occupancy of this house with his family, and the possession of the premises on which the same was situated had remained in him, another question would be presented. But here as complete an eviction as could be made at law had been made by the landlord, and all possessory interest appellee had ever acquired to the premises, by lease or otherwise, had been terminated.

Messrs. R. D. McDonald, for appellee.

It is provided by the Revised Statutes of Illinois, Sec. 101, Chap. 52, that every householder having a family shall be entitled to an estate of homestead in the farm or lot of land and buildings thereon owned, or lawfully possessed, by lease or otherwise, and occupied by him or her as a homestead. This clause of the statute is designed for the benefit of the debtor, and should be liberally construed so as to effectuate, and not thwart, its object and policy. Being remedial, it must be liberally construed to meet the benevolent end in view. Deere v. Chapman, 25 Ill. 610.

Keeping in view the trend of all the decisions upon the subject, Justice Craig, in Watson v. Saxer, 102 Ill. 585, well says of the scope of this statute: "Under the statute a tenant holding a leasehold interest in premises may claim the

benefit of the statute as well as the owner of the fee. Indeed, the holder of any possessory interest in lands, without regard to the extent of title, may evoke the aid of the statute." A licensee or a tenant at will have a possessory interest, and would therefore be entitled to an estate of homestead. The homestead can only be lost by abandonment, *animus rever-tendi*. Shepherd v. Brewer, 65 Ill. 383.

In Cobb v. Smith, 88 Ill. 199, it is held that the intention is important in determining as to abandonment, and it seems to be held the important factor running through the under-current of all the decisions. In McMillan v. Walker, 38 Tex., 40, it is laid down very emphatically that "to abandon a homestead, a party must forsake and leave it with the intent never to return to it as a homestead;" and again, "the question of abandonment is almost exclusively a question of intent, since no legal abandonment can occur without a fixed intent to renounce and forsake, or to leave never to return."

Where a person leaves a place which is occupied as a homestead for a temporary purpose, intending to return, it can not be held an abandonment of the homestead. Kenley v. Hudel-son et al., 99 Ill. 493; Potts v. Davenport, 79 Ill. 455; Wilkins v. Marshall, 80 Ill. 74.

UPTON, J. This action of trespass was commenced in the Circuit Court of La Salle county by appellee against the appellant for the tearing down and conversion of appellee's dwelling-house, claimed by him to have been at the time his homestead.

This dwelling-house was erected by the plaintiff on lands, the title to which was in the La Salle priests of the congregation of the mission, and about one hundred rods from a coal-shaft, then being worked by the Caledonia Coal Company, and being under a contract or lease with the priests of the congregation of the mission in whom was the fee of the land. The appellee was a coal miner, and had been such all his business life, and had a family consisting of wife and children residing with him.

John Duncan, a brother of the plaintiff, and one William Lumsden, constituted the Caledonia Coal Company, and by

Feldes v. Duncan.

some agreement or contract with that company, and with the full knowledge of the priests of the congregation of the mission, the plaintiff, in the early part of the year 1881, erected the house in question, moved into and occupied the same as a homestead until some time in December, 1884, when, soon after the death of his wife, he removed with his children and a portion of his household effects to La Salle, to the house of his married daughter, so that she could take care of his children. When he thus removed from his home, he left in the house in question "a stove, cooking utensils and two beds, a sewing-machine, a bed and bedding for a man that was looking after the house. The house foundations were posts imbedded in the ground about two and one-half feet, and it was worth, according to the testimony, from $125 to $500.

It was levied on by virtue of a special execution issued upon a judgment in attachment against appellee; sold at execution sale, bid off by and sold to appellant at that sale, and by him the main portion of the house was torn down and removed to La Salle, and converted to the use of appellant in 1885, in the fall or winter of that year.

It seems that the Caledonia Coal Company operated the coal mine until some time in the year 1883, when the company suspended, and the mine was worked by the Co-operative Coal Company, which failed in the fall of 1883, and from that time until the spring of 1884 it was operated by the priests of the congregation of the mission.

In the spring of 1884 the machinery was all taken away from the coal-shaft, coal-mining ceased, and the shaft filled with water, and so remained at time of hearing below. On the hearing in the court below, evidence was introduced on the part of the appellant tending to show that upon the removal of the machinery from the coal shaft all business was suspended at those mines, and as a consequence, there was no employment for the miners there, and perhaps would never be again, and that appellee had so stated, and had offered to dispose of the house in question for that reason; and stating, as claimed in the testimony, that he should never return to reside in said

house again, as there was nothing for him there to do and never would be again, all of which was denied by the appellee, and it was insisted in the court below, and is now claimed, that the appellee had abandoned that house as his homestead, if indeed he ever had one therein.

In the court below the issues joined presented the question of the right of homestead in and abandonment of the house in question by the appellee as such homestead, and was submitted to a jury, who found a verdict for appellee and assessed his damages at $250, and judgment having been rendered on that verdict, the case is here by appeal.

Two questions are presented on the facts in this record : First. Had appellee a right of homestead to the house in question of such a nature as could be set up by him, under the homestead laws of this State, to exempt it from attachment, judgment, levy or execution sale, for the payment of his debts. Second. If such exemption ever existed, was it abandoned or waived by the appellee.

First. Sec. 1, Chap. 52, R. S., provides that every householder having a family shall be entitled to an estate of homestead in the farm or lot of land and buildings thereon owned or lawfully possessed, by lease or otherwise, and occupied by him or her as a homestead, etc.

This statute was designed for the benefit of the debtor, and should be liberally construed, so as to effect and not thwart its object and policy, and, being remedial in its nature and effect, must be so construed.

Under the homestead act of 1851, which provided that the lot of ground and the buildings thereon occupied as a residence and owned by the debtor should be exempt, etc., although the language of the act seemed to require the debtor to be the owner of the property, it was held that the debtor was not required to own an estate in fee in the property in order to claim the protection of the statute. Deere v. Chapman, 25 Ill. 610. It was then said: "The object of the law clearly was to secure the head of the family in the possession and enjoyment of the lot and buildings for the maintenance and shelter of himself and family as a home, without any spe-

cial regard to the extent of the estate or title by which he owned it."

The first section of the present homestead act is far more liberal as to the ownership of the land, or the right or interest of the person claiming such homestead, than was the old statute under which the decision cited was rendered. The language of the present statute is that "every householder having a family shall be entitled to an estate of homestead to the extent in value of one thousand dollars in the farm or lot of land and buildings thereon, owned or rightfully possessed, by lease or otherwise, by him as a residence," etc.

Under the present act of homestead it has been held, and as we think rightfully, that the holder of any possessory interest in lands, without regard to the extent of such title, may invoke the aid of the statute. Watson v. Saxer, 102 Ill. 585.

That the appellee in the case at bar was a householder having a family occupying and owning a house or building not exceeding in value $1,000, situate upon a lot of land *rightfully possessed by him*, by *lease or otherwise*, and occupied by them as a residence prior to December, 1884, we think is made manifest by the evidence upon this record. Tested by the adjudications and principles to which we have referred, he had the legal right at that time to claim the protection of the statute to the property so occupied by him, which is the property now in question.

Second. Was it abandoned or waived by the appellee? In the case of Potts v. Davenport, 79 Ill. 454, it was held that the term "occupied as a residence" in the statute exempting homesteads, means that the premises shall be the home of the party claiming a homestead right, and that temporary absence by the party and his family, without acquiring another home, is not an abandonment of the right. Whether premises occupied by a debtor and his family when he has removed from them, and after the recovery of a judgment against him returned thereto, was his home during his absence was a question of fact to be determined by the jury from all the circumstances in the case.

It is needless to restate the facts in this case as to the ques-

tion of abandonment, having already stated the same in sub-
stance. The question, in view of all the facts and circumstances
in this record, is not free from difficulty, we confess, but it
was one peculiarly within the province of the jury to deter-
mine, as we have seen; and after a careful inspection of this
record we can not say they were not justified in finding there
was no abandonment of the homestead right of appellee to the
property in question.

It is insisted also that the verdict is excessive. It is true
the damages awarded were somewhat large, but in view of all
the evidence we think the jury were justified in the amount
of the verdict rendered.

The refusal to admit the lease by the trial court, if the
ruling was not correct, was not hurtful to appellant, and the
error complained of as to the admisssion of other evidence
was not sufficient to authorize us to set aside the verdict.

It is also insisted by the appellant that the trial court erred
in refusing to give to the jury the second instruction asked for
by the defendant below; and that the court also erred in
modifying the third instruction asked for by the defendant,
and in refusing the fifth and ninth instructions.

We have carefully examined these instructions and the
objections made thereto, and are of the opinion that there is
no error in the ruling of the court below in that regard, and
finding no substantial error in this record, the judgment of
the court below must be affirmed.     *Judgment affirmed.*

C. B. SMITH, J., dissenting. I do not agree with either the
reasoning or conclusion of the majority of the court in this
case. I think the proof clear that appellee had abandoned
his homestead, and that that fact is shown by his own admis-
sions and conduct in relation to the property. I think also
the damages are grossly excessive, far exceeding in value the
property taken. I also hold that the objections urged by
appellant against the instructions given for appellee and
refused for appellant are well made, and that the court erred
in that respect. I think the judgment does injustice to the
appellant, who seems to have been guilty of no offense except
an effort to collect an honest debt.