### Celia Macavenny et al. v. Mary Ralph.

1. HOMESTEAD—*Occupancy by Tenant is Occupancy by Owner.*—The occupancy of a place as a homestead by a tenant by sufferance is the occupancy by the owner of the estate.

2. SAME—*Abandonment a Question for the Jury.*—On a jury trial, where homestead is involved, the question whether or not there was an abandonment of the homestead is for the jury to decide.

3. SAME—*When Proceeds of Sale of Homestead Are Exempt as Homestead.*—Under Ch. 52, Sec. 6, R. S., where a homestead right in premises is not abandoned before their sale, the owner has the same right in lots purchased with the proceeds of the sale.

**Bill to Declare Void a Certificate of Sale.**—Error to the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed April 20, 1903.

**Statement.**—Mary Ralph was complainant, and plaintiffs in error were defendants in the Circuit Court, and will be so referred to hereafter.  Complainant claims a homestead in the following described premises: Lots 61 and 62, in Givins & Gilbert's subdivision of the south fifteen acres of the east one-half of the east one-half of the southwest quarter of section 14, township 39, east of the 3d principal meridian, etc.   The property is situated on Grenshaw street, in the city of Chicago.   October 20, 1898, Celia Macavenny recovered a judgment in the Circuit Court of Cook County against Mary Ralph for the sum of $638 and costs, on which judgment execution issued, by virtue of which James Pease, then sheriff of Cook county, sold, December 27, 1898, to the defendant, Celia Macavenny, lot 62, above described, for the sum of $500.   Subsequently an *alias* execution was issued on said judgment, and such proceedings were had in reference thereto that, April 18, 1899, said sheriff sold said lot 61 to Richard A. Lingane for the sum of $298.70.   Certificates of sale were issued to Macavenny and Lingane, and were recorded.

The bill, filed March 6, 1900, makes Celia Macavenny, Richard A. Lingane, James Pease and Ernest J. Magerstadt, who was sheriff when the bill was filed, defendants. The complainant prays that the certificates of sale may be declared void, and that her homestead in said lots may be affirmed and established, etc.   Answers were filed by the defendants, and the cause was heard on the testimony of witnesses and documents produced in open court, and the court rendered a decree substantially as prayed by the bill.

The complainant was married in 1859 to Michael Ralph, who died about the last of December, 1882.   About four years before the Chicago fire of 1871, or in 1867, complainant purchased, with her husband's money, lot 136 in Givins & Gilbert's subdivision, heretofore mentioned, situated on

Taylor street, in the city of Chicago. There was a house
on the lot. Complainant and her husband occupied the lot
as a home from about the time she purchased it until the
time of the Chicago fire, when the house was burned down.
They then erected a two-room cottage on the lot, and lived
in it for about two years after the fire, when, on account
of the place being too far from the husband's work, he
being a stone mason and bricklayer, they moved to a place
on State street, in Chicago, and left in the Taylor street
house an old couple of the name of Dunsing, to take care
of the place free of rent. They lived on State street until
Michael Ralph died in December, 1882, and about three
years after that time, or in 1885, complainant moved back
to the Taylor street property and remained there until
May 3, 1886, when she sold the property to the Chicago
Transfer Railway Company for the sum of $850. The com-
pany had instituted condemnation proceedings to condemn
the lot. In from six weeks to two months after said sale
to the railway company, complainant, with the purchase
money, $850, purchased lots 61 and 62, above described, on
Grenshaw street, and moved the Taylor street house onto
lot 61, and put shingles on the house and added a storm
porch to it and dug a well on the lot. She also removed
the fence from the Taylor street lot and put it around lots
61, 62, 63 and 64. The owner of lots 63 and 64 permitted
her to enclose them with her own lots and use them as a
garden. Complainant has lived on the lots so purchased
by her ever since she moved her house and fence onto them.
Complainant and her husband, during the life of the latter,
constituted the family. They had no children. Since the
death of her husband, complainant has had no family. It
appears from the evidence that complainant and her hus-
band did not occupy a house on State street, but merely
rented a couple of rooms.

WALTER G. KRAFT, attorney for plaintiffs in error.

RICHARD W. MORRISON, attorney for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

Counsel for defendants does not, in his opening argument, contend that there was an abandonment of the Taylor street homestead, and does not even discuss the question, except in his reply brief. Inasmuch, however, as counsel for complainant has discussed that question at length, and as it is the important question in the case, we will consider it. That complainant and her husband occupied lot 136, the Taylor street lot, as a homestead, is not disputed; and if there was not an abandonment of the homestead right in that lot, prior to the purchase by complainant of lots 61 and 62 with the proceeds of the sale to the railway company of the Taylor street lot, then complainant has a homestead in said lots. Hurd's Rev. Stat., Ch. 52, Sec. 6.

The evidence tends to prove that when the complainant and her husband removed from the Taylor street lot to the rooms on State street, their sole object was to be nearer to the husband's place of work, and the fact that they permitted an aged couple to occupy the premises, rent free, for the mere purpose of having the place taken care of, tends to prove an intention on their part to retain the place as a homestead and to return to it. The occupancy by the Dunsings, their tenants by sufferance, was their occupancy. In White v. Plummer, 96 Ill. 394, the court say :

"Occupying the homestead by another is occupying it by the owner of the estate. It is simply another mode of enjoying the right secured by the statute."

It appears from the evidence that complainant, after her husband's death, returned to the Taylor street property and occupied it until she was practically compelled, by condemnation proceedings, to sell it to the railway company. As before stated, if there was no abandonment of the Taylor street homestead, complainant has a homestead in lots 61 and 62, purchased with the proceeds of the sale of the Taylor street property. She was in possession of lots 61 and 62 when the executions in question were levied.

On a jury trial, where homestead is involved, the question whether or not there was an abandonment of the homestead

is for the jury to decide. Feldes v. Duncan, 30 Ill. App. 469. In the present case, the question was for the court, and we can not say that the finding of the court is manifestly against the evidence.

Defendant's counsel contends that a demurrer filed by three of the defendants should have been sustained; but the demurrer was waived by the joint answer of all the defendants. It is also objected that there was no affirmative evidence of the value of the lots. It appears that lot 62 was sold at public sale by the sheriff December 27, 1898, for $500, and that lot 62 was sold at like sale April 18, 1899, for $296.70, the total for the two lots being $798.70, and complainant testified that the two lots were worth seven or eight hundred dollars.

Other contentions of the counsel we do not think it necessary to consider.

The decree will be affirmed.