William V. Moore v. United States One Stave Barrel Company et al.

Gen. No. 13,976.

Consolidated With
First National Bank v. United States One Stave Barrel Company et al.

Gen. No. 13,948.

1. PARTIES—*who may maintain bill to enforce stock liability.* The assignee of a judgment against a corporation may maintain in his own name a bill to enforce stock liability.

2. CORPORATIONS—*what not payment for corporate stock.* Held, under the evidence in this case, that a stock subscription was not fully paid by the transfer of patent rights.

3. CORPORATIONS—*who liable for unpaid stock subscription.* An assignee of corporate stock, the subscription for which has not been paid in full, is liable for the unpaid subscription where he takes the stock with notice of the facts.

4. CORPORATIONS—*power of directors to release liability for stock subscriptions.* It is beyond the power of the directors of a corporation to release a stockholder from his liability for an unpaid stock subscription, at least so far as existing creditors are concerned.

5. CORPORATIONS—*when directors disqualified.* Directors are disqualified from voting with respect to matters in which they have a personal interest or with respect to a matter concerning the personal interest of another director who controls their votes.

Bill in equity. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch

Appellate Court at the October term, 1907. Reversed and remanded. Opinion filed May 1, 1908. Rehearing denied May 12, 1908.

WHITMAN & MILLER, for appellants; ORVILLE PECKHAM and EDWIN WHITE MOORE, of counsel.

O'BRYAN & MARSHALL and HIRAM T. GILBERT, for appellees.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

Appellant Moore filed in the Superior Court his bill in equity against The United States One Stave Barrel Company, Espy L. Smith, Lutellus Smith, John F. Palmer and Douglas Dyrenforth. The First National Bank of Chicago was, on its petition, made a co-complainant with Moore. On the hearing the bill was dismissed for want of equity, and from that decree Moore and said bank took separate appeals, which in this court have been consolidated for hearing. The bill as it stood, after the Bank was made a complainant, was a bill to compel the two Smiths and Palmer to pay the judgment of Moore against said Barrel Company, and also the judgment of said Bank against said company upon the ground that said Smiths were liable to complainants, as creditors of said company, on unpaid subscriptions to the capital stock of said company, and that Palmer was also liable as the assignee and holder of unpaid shares of stock of said company which were subscribed for by McGill, and by his consent issued by the company to Dyrenforth, and upon the return and cancellation of his certificate reissued to Palmer. Said Barrel Company was organized as a corporation under the laws of Illinois, April 7, 1896, with a capital of $100,000, divided into 1,000 shares of $100 each, of which 250 shares each were subscribed for and taken by Espy L. Smith, Lutellus Smith, Heylin T. Smith and James K. McGill.

The judgment of Moore is a judgment recovered against the Barrel Company by True, as receiver of

the Frontier Iron Works, and by said receiver sold and assigned to complainant Moore. We think that as such assignee Moore could maintain a bill in his own name, and is entitled to the same relief that the plaintiff in the judgment would be entitled to if the assignment had not been made and the bill had been filed by him. Dimond v. Rogers, 203 Ill. 464.

The suit of Moore was, in effect, a suit for the benefit of all creditors of the barrel company who should ask to be made co-complainants with Moore. The fact that appellant Bank did not recover its judgment until after the filing of Moore's bill is immaterial.

The Barrel Company ceased to do business in 1897 or 1898. Moore's bill was filed October 1, 1901, and the bank became a complainant January 22, 1902. We do not think that either complainant should be denied relief on the ground of laches.

We will first consider the question as to the liability of the defendants Espy L. and Lutellus Smith, and then that of the defendant Palmer. March 7, 1896, the following instrument in writing was executed by Louis Reed and Lutellus Smith:

"Option.

Whereas, John W. Philp, of Humboldt, Tennessee, did obtain Letters of Patent of the United States of America, for certain improvements in the manufacturing of staves for barrels, etc., which Letters Patent bear date the fourth day of September, A. D. 1888, and are numbered 389,006, and also another certain Patent issued as aforesaid to the said Philp, bearing date the ninth day of March, A. D. 1886, and numbered 337,701; and,

Whereas, Louis Reed is now the owner of said Patents, and all rights and privileges thereunder, excepting for the States of Louisiana and Mississippi;

Now, this Indenture witnesseth, That in consideration of One Dollar, and other good and valuable considerations, the receipt of which is hereby acknowledged, I, Louis Reed, aforesaid, hereby give and grant to Lutellus Smith of Chicago, Illinois, the sole right,

option and privilege of selling said patents in and for all of the United States and Territories, excepting the States of Louisiana and Mississippi, for the sum of Fifteen Thousand Dollars ($15,000) at any time on or before Thirty days from the date of this instrument, to any person, persons or company the said Smith may see fit, and to make any and all necessary contracts for the purpose of said sale and of consummating it; and I hereby agree to execute, acknowledge and deliver any and all papers necessary for the assignment or transfer of my interest to any person, persons or company said Smith may designate, for said sum within said time.

Witness my hand and seal this seventh day of March, A. D. 1896.

Signed: LOUIS REED.      [SEAL.]
Signed: LUTELLUS SMITH.      [SEAL.] ''

The same day apparently the following instrument in writing was executed by the same parties, although it is dated March 6, 1896:

"Whereas, I have this day sold to Lutellus Smith the right, option or privilege of selling and disposing of certain letters patent numbered 389,006, and also certain letters patent numbered 337,701, more fully and particularly described in said agreement called option, to which reference is made, now, therefore, this agreement, witnesseth, that should the said Smith sell said patents for the sum named in said option, to wit: fifteen thousand dollars, I agree to pay to the said Smith for his services in the premises the sum of five thousand dollars immediately upon payment being made to me, or upon my accepting the terms of any sale made by said Smith, and should the said Smith receive the said purchase price that he may retain therefrom the said sum of five thousand dollars in full of all demands in the premises.

LOUIS REED.      [SEAL.]
LUTELLUS SMITH.      [SEAL.]

Chicago, March 6, 1896."

The first board of directors of the Barrel Company, elected April 6, 1896, consisted of Espy L., Lutellus

and Heylin T. Smith, McGill and Van Bergen. These directors, excepting Heylin T. Smith, met July 29, 1896, and adopted the following resolution:

"Whereas, on the third day of April, 1896, before the organization of this Company, the President and Secretary, in the name of this Company, entered into a contract with one Louis Reed, relating to his services, and accepted from him certain assignments of his interest in Patents No. 337,701 and 389,006, being the entire interest covered or protected by said patents excepting in and to the States of Mississippi and Louisiana, and paid to the said Reed the sum of Five Thousand ($5,000) Dollars, in money, as well as six notes, signed in the name of this Company, five of which notes were for the sum of One Thousand ($1,000) Dollars each, and one of said notes for the sum of Five Thousand ($5,000) Dollars; and

Whereas, at the time of said transaction with said Reed, Lutellus Smith, Esq., held, owned and controlled an option from the said Louis Reed for the purchase of said interest in said patents, under and pursuant to which option the said transaction was had with said Louis Reed, and this Company thereby given the benefit of said option; and

Whereas, the said option, as well as the said patents, were of great value to this Company and essential to the performance of the functions and purposes for which it was organized:

Now, therefore, be it resolved:

First: That the contract made on the third day of April, A. D. 1896, purporting to be between this Company and the said Louis Reed, be, and the same is hereby ratified and adopted as to the act and deed of this Company.

Second: That the Five Thousand ($5,000) Dollars advanced to the said Reed on said third day of April, be severally credited to the person or persons advancing the same, and that due credit therefor be entered upon the books of this Company.

Third: That the said six notes heretofore mentioned, given in the name of this Company, to said Louis Reed, on the third day of April, 1896, for the

total sum of Ten Thousand ($10,000) Dollars, be hereby adopted, ratified and approved, and the payment thereof assumed by this Company as its obligation.

Fourth: That the sum of Forty-five Thousand ($45,000) Dollars is a fair, just and equitable sum to be paid to Lutellus Smith and his confrere, Espy L. Smith, for the giving to this Company the benefit of the option acquired by them of and from the said Louis Reed prior to the third day of April, 1896, for the purpose of the said patents or patent interests. And the said Lutellus Smith being now present, and consenting thereto, it is hereby ordered that the sum of Twenty-two Thousand Five Hundred ($22,500) Dollars be severally credited to the said Lutellus Smith and Espy L. Smith as subscribers to the capital stock of this Company, and that stock of this Company be duly issued accordingly.''

It is claimed by appellees, Espy L. and Lutellus Smith, that when the above resolution was adopted, each was the owner of one-half of the Reed-Philp patents, except for the States of Louisiana and Mississippi, and that they sold their interest in said patents to the Barrel Company for $50,000 in the capital stock of the company; that the patents were fairly worth that sum, and that by such transfer their stock was paid for. We agree with the master in his conclusion that the evidence does not support their contention. The only writings signed by Louis Reed in evidence, are the two contracts with Lutellus Smith above set forth, and the formal deed of assignment by Reed of his interest in said patents to said Barrel Company, executed and acknowledged November 24, 1906.

The contract of March 7, 1906, did not give to Lutellus Smith the right to buy Reed's interest in said patents at the price of $15,000, but only gave him the exclusive right to sell the same at that price to others for thirty days, with a separate agreement that in case of such sale Reed should pay him for his services in making the sale $5,000. The resolution of July 29,

recites transactions had April 3, 1906, not between Espy L. and Lutellus Smith as individuals, and Reed, but between them as officers of the Barrel Company, in the name of the company, and Reed. True, the Barrel Company was not then a corporation, but proceedings to organize such corporation were begun March 19 and completed April 7, and the Smiths gave Reed for $10,000 of the purchase price, notes purporting to be the notes of the corporation, which notes were by said resolution adopted and assumed as the notes and obligations of the corporation.

The Act of Congress provides that "every patent or interest therein shall be assignable in law by an instrument in writing." The evidence does not show that Reed assigned his interest in said patents to either of the Smiths by an instrument in writing. The patents belonged to Reed until they were sold to the company by the Smiths, under the authority given to Lutellus Smith by the contract of March 7. The question of their value is not material, for they were acquired by the company for $15,000. Of this amount Espy L. and Lutellus Smith each furnished $2,500, and for that sum and no more, in our opinion, is each entitled to credit on his original stock subscription for 250 shares of stock by reason of the purchase of said patents by the corporation.

We next come to the question of the liability of Palmer. Palmer loaned the Barrel Company, August 6, 1896, $2,500 and entered into an agreement in writing with the company giving him the privilege of demanding and receiving from the company in payment of such loan 250 shares of its stock, "legally full paid and non-assessable."

October 27, 1906, the company issued to Dyrenforth, who acted for Palmer, a certificate for 250 shares of its capital stock. The same day, that certificate was surrendered and a new certificate issued in lieu thereof for the same number of shares to Palmer. The stock issued to Dyrenforth was the stock originally sub-

scribed for by McGill, who released his rights and consented that the company might resell said stock. Palmer denies that he knew that the 250 shares of stock he acquired was the stock originally subscribed for by McGill. He, in his cross-bill alleged that October 27, 1906, he concluded to avail himself of the option to accept in payment of said notes of $2,500 "legally full paid and non-assessable stock" to the amount of $25,000; that at the time he so elected he "did not know in what manner said corporation had acquired said stock, or the right to dispose of the same to your orator as full paid and non-assessable stock, and your orator implicitly relied upon the said Espy L. Smith and Lutellus Smith to take all the steps that might be necessary and proper to cause the delivery to your orator of said twenty-five thousand dollars ($25,000) par value of stock legally full paid and non-assessable; that at the time the said transfer of said stock was to be consummated your orator gave to said Douglas Dyrenforth your orator's check for the sum of twenty-five thousand dollars ($25,000) on the promise of said Smiths that said twenty-five thousand dollars ($25,000) par value of stock would be issued to said Douglas Dyrenforth and be by him transferred or assigned to your orator, and that said corporation would thereupon issue to your orator a certificate for said twenty-five thousand dollars ($25,000) par value of the stock, and return to your orator said twenty-five thousand dollars ($25,000), whereupon said corporation did on the same day return to your orator said twenty-five thousand dollars ($25,000), together with a certificate for twenty-five thousand dollars ($25,000) par value of stock, purporting on its face to be and alleged by said Espy L. Smith and Lutellus Smith to be legally full paid and non-assessable."

May 4, 1907, Palmer wrote Espy L. Smith referring to said loan of $2,500, as follows:

"I (was) to have the option of asking re-payment of this obligation in cash; or, if I so elected, to ac-

cept in lieu thereof 250 shares of the Barrel Co., legally full paid and non-assessable, to the end that I might be put on the same footing as yourself and Lutellus Smith in original stock holdings and costs thereof, viz.: 25 per cent. of total stock at 10 per cent. of full value.''

Both the Smiths testified that Palmer was told when the loan was made that the stock he was to get had been subscribed for by McGill, and that the release from McGill of his right to the stock was obtained at Palmer's request. We think that the evidence shows that Palmer had full notice of all the material facts in relation to the 250 shares of stock which were transferred to him by Dyrenforth, and must therefore be held to have known that said shares were unpaid except as to the amount of $2,500.

May 20, 1897, when the Barrel Company was known to be insolvent, and long after the indebtedness upon which appellants' judgments are founded had been incurred, the directors of the company, at Palmer's instance, passed a resolution providing for the rescission of the said arrangement by which Palmer had acquired 250 shares of the company's stock for $2,500, and directed that the officers of the company accept from Palmer the surrender of his certificate for said 250 shares of stock and cancel the same, and said certificate was thereupon surrendered, by him to the company. The resolution was adopted by the votes of Palmer, Dyrenforth and Espy L. Smith, Lutellus Smith the only other director voting against it. Dyrenforth was not a stockholder, and was elected a director at Palmer's request to represent him. Espy L. Smith had given Palmer, November 9, 1896, an irrevocable power of attorney to vote his stock as Palmer should direct, for the expressed purpose of giving Palmer, ''the sole direction of the policy of the company, so far as it could be held or exercised by the owner of the majority of the stock.'' This resolution was, we think, invalid for two reasons: First, be-

cause it was beyond the power of the directors to release Palmer from his liability to existing creditors (Zirkel v. Joliet Opera House Co., 79 Ill. 334), and second, because it was passed by the votes of Palmer and two other directors under his control (Adams v. Burke, 201 Ill. 399).

It is further contended on behalf of Palmer that if the Smiths and Palmer are each liable, Palmer is entitled to require the liability of the Smiths to be exhausted before resort is had to his liability. We find no sufficient support for this contention in the facts disclosed by this record.

The conclusions reached by us are the same as those reached by the master and stated in his report. In that report the master has found the amount due from the Smiths and Palmer respectively to the Barrel Company, after giving to each credit for all the sums paid or loaned to the company. We think the chancellor erred in sustaining the exceptions to the report of the master, and the decree will be reversed and the cause remanded with directions to overrule the exceptions of the defendants to said report, and to enter a decree in accordance with the recommendations therein contained.

*Reversed and remanded with directions.*