### THOMAS M. WATSON *et al.*

*v.*

### JOHN SAXER.

*Filed at Springfield March 28, 1882.*

1. HOMESTEAD—*of the nature of the title to which it may attach.* Under the Homestead act of 1872, a tenant holding a leasehold interest in premises may claim the benefit of the statute, as well as if he were the owner of the fee; and the holder of any possessory interest in lands, without regard to the extent of title, may invoke the aid of the statute. The holder of land under a contract of purchase, under that act, as well as under the act of 1851, occupying the same as a residence with his family, is entitled to a homestead right in the premises to the value of $1000, as against all creditors, except his vendor for the unpaid purchase money.

2. SAME—*new one bought from proceeds of sale of former one.* Where a person lawfully entitled to a homestead in premises sells his interest therein, and out of the proceeds of the sale within one year purchases a

house and lot for a residence for himself and family, which does not cost or exceed in value $1000, and goes into its actual occupancy, by residence, in four or five days afterwards, such house and lot will constitute his homestead, and any sale thereof on execution against him will be a nullity, and the sheriff's deed will pass no title.

APPEAL from the Circuit Court of Pike county; the Hon. S. P. SHOPE, Judge, presiding.

Mr. J. S. IRWIN, for the appellants:

Homestead right may be set up and relied upon in an action of ejectment. *Stevens* v. *Hollinsworth*, 74 Ill. 202.

A judgment is not a lien on the homestead. *Green* v. *Marks et al.* 25 Ill. 221; *Bonnell* v. *Smith et al.* 53 id. 376; *Shackelford* v. *Todhunter*, 4 Bradw. 271.

The rights of parties to homesteads depend upon the laws in force at the time of the rendition of judgment upon the contract. *Derby* v. *Dickson*, 4 Bradw. 187.

A homestead right may be claimed in a less estate than a fee—may be in an equitable estate. *Tomlin* v. *Hilliard*, 43 Ill. 300; *Blue* v. *Blue*, 38 id. 9; *Allen* v. *Hawley*, 66 id. 168.

Tenant by the curtesy may claim. *Potts* v. *Davenport et al.* 79 Ill. 456.

Any one owning an estate in tail—for life, for years—by the curtesy or in dower, may claim homestead. *Deere* v. *Chapman*, 25 Ill. 612; *Conklin* v. *Foster*, 57 id. 104; *McClurken* v. *McClurken*, 46 id. 327.

If the estate owned by the debtor is such an interest in land as may be sold under execution, he may claim a homestead in it, and this is the test. *Deere* v. *Chapman*, 25 Ill. 610; *Conklin* v. *Foster*, 57 id. 107; *McClurken* v. *McClurken*, 46 id. 327; *Shackelford* v. *Todhunter*, 4 Bradw. 274; Thompson on Homesteads, secs. 165–66; *Vogler* v. *Montgomery*, 54 Mo. 584.

A possessory title may be sold under execution. *Thompson* v. *Bowman*, 29 Ill. 426; *Same case*, 30 id. 84; *Colwell* v. *Carper*, 15 Ohio St. 285.

Homestead act to be construed liberally. *Turney* v. *Saunders,* 45 S. C. 527; *French* v. *Carr,* 2 Gilm. 664; *Deere* v. *Chapman,* 25 Ill. 610; *Lœb* v. *McMahon,* 89 id. 487.

There may be a homestead against all strangers, although not against the vendor or owner of the paramount title. Thompson on Homesteads, secs. 165–6, 334, n. 2; *Spencer* v. *Geisman,* 37 Cal. 99; *Clark* v. *Twanick,* 56 Ga. 359; *Brooks* v. *Hyde,* 37 Cal. 373; *Smith* v. *Whittle,* 50 Ga. 626; *Garaty* v. *DuBose,* 5 S. C. 493; *McHendley* v. *Reilly,* 13 Cal. 75; *McClurken* v. *McClurken,* 46 Ill. 327; *Hopper* v. *Parkinson,* 5 Nev. 233; *Allen* v. *Hawley,* 66 Ill. 169; *People* v. *Stitt,* 7 Bradw. 298.

Even before the Homestead act of 1872, by a fair construction of prior acts, moneys arising from the sale of the homestead were exempt from execution. *Walsh* v. *Horine,* 36 Ill. 238; *Cole* v. *Green,* 21 id. 104; *Green* v. *Marks,* 25 id. 223; *Vaughn* v. *Thompson,* 17 id. 80.

. And the proceeds being exempt in his hands, may be exchanged or converted into a new homestead. *Vaughn* v. *Thompson,* 17 Ill. 80; *Shackelford* v. *Todhunter,* 4 Bradw. 271; *People* v. *Stitt,* 7 id. 299; *Watkins* v. *Blatschiniski,* 40 Wis. 347; Thompson on Homesteads, secs. 395, 399.

Messrs. ORR & CRAWFORD, and Mr. J. S. BAILEY, for the appellee:

A judgment against a party attaches to real estate as soon as it is acquired by him, and although he is not in possession when the conveyance is delivered to him, the lien attaches, and the taking of possession afterwards, and residence thereon, will not divest such lien which attached before the acquisition of a homestead. *Tourville* v. *Pierson,* 39 Ill. 447; *Reinbach* v. *Walter,* 27 id. 393.

The Homestead law of this State, until July 1, 1872, contained no clause exempting the proceeds of a voluntary sale of a homestead from execution, and if the law in force when

the cause of action accrued is to govern the rights of the parties, then Reynolds' exemption ceased when he disposed of his interest in the farm, and the proceeds of such sale, if converted into real estate, became liable for the payment of his debts. *Bronson* v. *Kinzie*, 1 How. 311; 1 Kent's Com. 419, note n; *Derby* v. *Dixon*, 4 Bradw. 190.

Counsel also contended, from the evidence and facts, that Reynolds had no homestead in the Gray farm, and especially after the rescission of his contract of purchase,—that he had no interest therein that could be sold on execution.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

This was an action of ejectment, brought by John Saxer, in the circuit court of Pike county, against appellants, to recover the possession of two certain lots in Griggsville. On a trial of the cause in the circuit court plaintiff obtained a judgment for the possession of the property, and defendants appealed.

Both parties claim title to the premises through Daniel B. Reynolds, who purchased of one Greene, on the 18th day of April, 1873. The plaintiff claimed under a judgment rendered against Reynolds in the circuit court of Pike county, on the 7th day of April, 1873, upon which the property was sold, and after the time for redemption had expired a deed was made. The defendants claimed under deed from Reynolds, executed after the rendition of judgment, basing their right to hold under the deed upon the alleged fact that the property was the homestead of Reynolds, worth less than $1000, and as such, subject to sale free from the lien of plaintiff's judgment. It is not claimed that the property is worth more than $1000, and had Reynolds owned and occupied it with his family at the time the judgment was rendered, no lien would have been created by the rendition of the judgment. On the other hand, a sale and conveyance by Reynolds would pass the title to his grantee, regardless of the judgment. Reynolds did not, however, obtain the property until

ten or eleven days after the judgment was rendered, and did not move on the premises until four or five days thereafter. It is, however, claimed by the defendants, that Reynolds possessed a homestead in a certain quarter-section of land in Pike county, which he sold for $3000, and within one year thereafter purchased the premises in question for a homestead, paying for the same with the money derived from the sale of such homestead.

Section 6 of the Homestead act declares: "When a homestead is conveyed by the owner thereof, such conveyance shall not subject the premises to any lien or incumbrance to which it would not have been subject in the hands of such owner, and the proceeds thereof, to the extent of the amount of $1000, shall be exempt from execution or other process for one year after the receipt thereof by the person entitled to the exemption; and if reinvested in a homestead, the same shall be entitled to the same exemption as the original homestead."

It is clear, from the evidence, that in August or September, 1869, Reynolds purchased of Gray a farm in Pike county, consisting of 160 acres; that he obtained a bond for a deed, under which he went into possession of the land, agreeing to pay therefor $8000. Reynolds moved on this land with his family, and occupied it as a home, from September, 1869, until August, 1872. During the time Reynolds occupied the land he erected a house, and made other improvements of the value of $3000, but paid no part of the purchase money. It also appears that the bond for a deed was surrendered to Gray in the winter of 1871 or spring of 1872, and on the first day of July, 1872, a written contract was made between Reynolds and Gray, under which Reynolds agreed to surrender the possession of the land to Gray on or before September 5, 1872, and he also agreed to deliver to Gray two-fifths of all crops raised on the land that season, and in consideration of the improvements and work done on the premises Gray

agreed to pay Reynolds $3000,—first paying such debts as Reynolds owed upon which Gray was surety, and the balance to be paid to Reynolds. Under this arrangement Reynolds received a note on one McMahon, for $830. This note, and $170 in cash, paid for the lots in question. It is true that Gray testified that before the first crop was matured after Reynolds went on the land, he became his tenant, and continued to occupy the land as such until he left, in 1872, under a verbal contract. This is, however, denied by Reynolds. But without stopping to determine what the precise character of the arrangement was between these two parties, the fact remains that Reynolds went into the possession of the land as a purchaser, and made valuable improvements, and never relinquished his rights as a purchaser until July 1, 1872, when he sold out his improvements and interest in the land for $3000. This contract was reduced to writing, and speaks for itself, and it establishes the fact, beyond dispute, that up to the time it was executed Reynolds retained a valuable interest in the premises. If at the time the contract was made Reynolds had no interest in the land, as Gray testified, and no right or title to it, it is very strange that Gray was willing to pay him $3000 for nothing.

The question then arises whether Reynolds had such right, title or interest in the Pike county farm as could be set up by him under the homestead laws of the State as exempt from attachment, judgment, levy, or execution sale for the payment of his debts. If he had, then the property in question, purchased with $1000, the proceeds of the sale of such homestead, would be entitled to the same exemption under the statute.

The Homestead act of 1851 provided that the lot of ground, and the buildings thereon, occupied as a residence and owned by the debtor, should be exempt. Under this statute, which seemed to require the debtor to own the property, in *Deere* v. *Chapman*, 25 Ill. 610, it was held that a debtor was not

required to own an estate in fee in the property in order to claim the protection of the statute. It is there said: "The object of the law most clearly is to secure the head of the family in the possession and enjoyment of the lot and buildings for the maintenance and shelter of himself and family as a home, without any special regard to the extent of the estate or title by which he owned it."

It will be observed that the first section of our present Homestead act is far more liberal as to the ownership of the land occupied as a homestead, than the old statute under which the decision cited was rendered. The language of the present statute is: "That every householder having a family shall be entitled to an estate of homestead, to the extent in value of $1000, in the farm or lot of land and buildings thereon owned or rightfully possessed, by lease or otherwise, by him as a residence." Under this statute a tenant holding a leasehold interest in premises may claim the benefit of the statute as well as the owner of the fee. Indeed, the holder of any possessory interest in lands, without regard to the extent of title, may invoke the aid of the statute. If we are correct in the construction of the statute, it is a matter of no moment whether Reynolds occupied the farm as a purchaser or as a tenant,—in either event he fell within the provision of the Homestead act. It is true that Reynolds could not claim a homestead in the farm as against Gray, his vendor, but that fact does not affect the question,—it was enough that he could avail of the statute as against creditors.

It is, however, contended that section 6 of the Homestead act, which exempts $1000, proceeds of a homestead conveyed, for one year, can have no bearing on this case, as appellee's debt was contracted in 1870, and the law was not in force until 1872. The Homestead act makes no distinction between debts contracted before or after its passage, and we do not regard it necessary in this case to determine whether the law should only apply to debts contracted after its passage, as in

our judgment a fair construction of the law in force when the debt was contracted would exempt $1000 derived from a sale of a homestead, for one year. Section 5, of the act of 1851, in express terms provides that where a homestead shall be sold under legal process, and $1000 shall be paid to the party holding such homestead, the money shall be exempt for one year. There is no difference in principle between a sale made under the process of court, and a voluntary sale, and whether the $1000 is secured one way or the other can make no difference. If it is derived from a sale of the homestead, and represents that estate, the spirit of the statute exempts it for one year.

After a careful consideration of the evidence we are of opinion that the judgment should have been in favor of the defendants. Reynolds purchased this property for a homestead with money derived from a sale of a homestead. Within four or five days after the purchase he moved on the property and occupied it with his family. Under such circumstances we are of opinion that the judgment upon which the property was sold, and under which the plaintiff derived his title, did not become a lien on the property, and that the sale under the judgment was a nullity, and no title passed.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*