JESSE DIMOND *et al.*

*v.*

DUNCAN B. ROGERS.

*Opinion filed June 16, 1903.*

1. CREDITORS' BILLS—*when bill lies under section 49 of Chancery act.* One holding a judgment upon which an execution has been returned unsatisfied may file a bill, under section 49 of the Chancery act, against the judgment debtor and others, to discover and subject to such judgment property alleged to be concealed or to have been disposed of in fraud of creditors.

2. SAME—*what necessary to relief under section 49 of the Chancery act.* To entitle complainant to relief on a bill filed under section 49 of the Chancery act, he must prove a transfer of the judgment debtor's property which in fact or in law was fraudulent as to creditors, or, in case of a voluntary conveyance, that the judgment debtor did not retain enough money to pay her debts.

3. SAME—*allegation of return of execution unsatisfied prima facie establishes insolvency.* An allegation in a bill filed under section 49 of the Chancery act, of the return of an execution on complainant's

judgment unsatisfied, *prima facie* establishes the insolvency of the judgment debtor at that time.

4. SAME—*bill filed under section 49 of Chancery act need not charge circumstances minutely.* A bill to subject to the payment of complainant's judgment property alleged to be concealed by the judgment debtor or to have been transferred in fraud of creditors need not charge minutely all the circumstances tending to prove the general charge and authorize the relief prayed.

5. SAME—*assignee of judgment may file bill under section 49 of Chancery act.* The assignee of a judgment upon which an execution has been returned unsatisfied may file a bill in his own name, without the issue of a new execution, to subject to the payment of his judgment property alleged to be concealed by the judgment debtor or to have been transferred in fraud of creditors.

6. SAME—*when husband's property is subject to payment of the wife's debt.* If the gift of property from a wife to her husband, which rendered her insolvent, is directly traceable into property owned by the husband, such property is subject to the satisfaction of a prior judgment against the wife upon a bill filed under section 49 of the Chancery act.

*Rogers* v. *Dimond*, 106 Ill. App. 202, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. CHARLES E. FULLER, Judge, presiding.

FISHER & NORTH, and F. W. BECKER, for appellants.

ROBERT M. BRAND, FRED ZICK, and JOHN C. RICHBERG, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellants filed their creditors' bill in the circuit court of Winnebago county against Minerva Churchill Rogers, William F. Huffman, Sarah Fisher and the appellee, Duncan B. Rogers, alleging the recovery of a judgment by the Second National Bank of Rockford, Illinois, against said Minerva Churchill Rogers, the issue of execution thereon, the return of said execution *nulla bona* and the assignment of the judgment to appellants,

and charging that the said judgment debtor had property which ought to be applied to the payment of the judgment; that she was the owner of or beneficially interested in some property, or the income thereof; that if she had made any sale, transfer or assignment of her property or effects, the same was merely colorable and. for the purpose of placing the same beyond the reach of said judgment, and that her husband, the appellee, Duncan B. Rogers, had in his possession personal property or real estate in trust for her or in which she was beneficially interested, particularly describing certain real estate in the city of Rockford which it was alleged was so held by him. The bill prayed for a discovery of the property and effects of the judgment debtor and of all trusts whereby any property was held for her benefit, as well as of any transfer of property or effects that she had made, and for a decree subjecting to the payment of the judgment any property held in trust for her or in which she was beneficially interested, whether held by her or any of the defendants. The prayer was for a full and complete discovery, and the application of any equitable assets discovered to the payment of the judgment. The defendants, except the appellee, were defaulted, and he answered the bill, admitting that he had in his possession, as agent of his wife, Minerva Churchill Rogers, certain shares of stock and notes which were worthless, but denying that he had any other property in which she was interested, and claiming that he was the absolute owner of the property described in the bill and situated in the city of Rockford, free from any interest of his wife or the appellants therein. Replication being filed, the case was referred to the master in chancery, who took the testimony and filed his report, reciting the recovery of the judgment, the issue of execution and return thereof, the transfer of the judgment to appellants and the insolvency of the judgment debtor. He found and reported that appellee was the holder of the

legal title to lots 1, 2, 3, 4 and 11 of Park Ridge addition
to the city of Rockford; that the moneys necessary to
pay a first mortgage indebtedness of $4000 on said prem-
ises were received by appellee as the proceeds of lands
and property conveyed to him by his wife, for which
there was no reasonable or sufficient consideration; that
a second mortgage of $4000 on said premises running
to the wife was satisfied in no other manner than by a
mutual arrangement between the appellee and his wife;
that there was due on the judgment $3268.26 and that
the premises were of the value of $7500, and adequate to
satisfy the judgment without recourse to any other prop-
erty equitably belonging to the judgment debtor.    He
recommended the court to grant relief to appellants as
against said premises.    The court overruled exceptions
of appellee to the report and entered a decree finding
that appellants were entitled to a lien on said premises
to the amount of their judgment and ordering payment
within thirty days, and in case of default, a sale of the
premises.    Appellee appealed to the Appellate Court
for the Second District, where the decree was reversed.
From the judgment of the Appellate Court the appel-
lants have brought the case to this court by appeal.

The bill was filed in pursuance of section 49 of chap-
ter 22 of our statutes, which provides that whenever an
execution shall have been issued against the property
of a defendant on a judgment at law or in equity, and
shall have been returned unsatisfied in whole or in part,
the party suing out such execution may file a bill in
chancery against such defendant and any other person,
to compel the discovery of property belonging to the
defendant, and to seek satisfaction of the judgment out
of property so discovered.    (1 Starr & Cur. Stat. 1896,
p. 593.)    It is not a bill to remove an alleged fraudulent
conveyance of particular property as an obstruction to
an execution, where the proper practice is to issue the
execution and file the bill in aid of it.    The bill contains

all the averments necessary to bring the case within the provisions of the statute, and it is not necessary in such a bill to charge minutely all the circumstances which may tend to prove the general charge and authorize the relief prayed for. Such a bill is proper where the defendants are alleged to have property and conceal the same, so that it cannot be reached by an execution at law, and to discover and subject property disposed of in fraud of creditors to the payment of a judgment. (*Mitchell* v. *Byrns*, 67 Ill. 522.) The bill mentions particular property in Rockford which it charges should be subjected to the payment of the judgment, but it does not allege any fraudulent conveyance of the same by Mrs. Rogers, and it was not necessary to aver that at the time of any conveyance or transfer by her with intent to hinder and delay her creditors, she did not retain enough money or property to pay her debts. That question and all the circumstances were matters of evidence, which need not be specifically charged in such a bill. The allegation of the return of the sheriff on the execution established *prima facie* the insolvency of Mrs. Rogers and that she had no property subject to the judgment at that time. (*Highley* v. *American Exchange Bank*, 185 Ill. 565.) In order to obtain relief it was necessary to prove a transfer which in fact or in law was fraudulent as to creditors, or in case of a voluntary gift or conveyance to the husband, that the judgment debtor did not retain enough money or property to pay her debts.

The answer of the defendant, Duncan B. Rogers, admitted the recovery of the judgment, the suing out and return of the execution, the failure of the Second National Bank and the appointment of the receiver. The assignment of the judgment to the complainants was proved. The stock, which the answer admitted the defendant had in his possession as agent of his wife, was one hundred and seventy-five shares of stock in the Gibbs Chair Company and five shares of stock in the Palace

Folding Bed Company, which corporations, he alleged, failed many years ago and the stock was absolutely worthless; also forty shares of stock of the L. M. West Manufacturing Company of the par value of $4000, held as collateral, the present value of which was unknown. The notes were sixteen in number, amounting to about $7000, dated mostly in 1890, which were alleged to be uncollectible. There were also two judgments against parties who had been discharged in bankruptcy, and it was alleged that in 1891 Mrs. Rogers loaned $5000 to B. L. Gibbs, who died insolvent. The answer admitted that defendant held title to lot 1, block 13, Church & Robertson's addition to Rockford, and alleged he was the absolute owner, stating that in May, 1893, his wife executed a $600 note to the Winnebago National Bank and secured it with a $600 mortgage which she owned on said premises; that in September he paid said note and took the mortgage, and in October, 1897, the owner of the premises conveyed them to him to avoid a foreclosure. He admitted that he held title to the lots in Park Ridge addition, and alleged that in April, 1893, L. Judson West was the owner, subject to a mortgage of $4000 and a mortgage to Mrs. Rogers of $4000; that in April, 1893, West conveyed said premises to him subject to said mortgages; that they were not then worth the amount of the mortgages; that he paid off the first mortgage in full and expended moneys in taxes and paid a debt of his wife, and she released her mortgage and surrendered her interest to him. He denied that his wife had any interest in the premises.

The facts proved are, in substance, as follows: Before her marriage, in March, 1892, Mrs. Rogers owned property near Rockford, which she sold for $23,000. The money realized from the sale was mostly invested in stocks, or loaned. At the time of her marriage she owned the mortgage for $600 on lot 1 in block 13, and the $4000 mortgage on the lots in Park Ridge addition. She also

owned lot 6, block 1, Knowlton's addition to Rockford, one hundred and sixty acres of land in Dakota and forty acres in Nebraska. The husband, Duncan B. Rogers, was keeping a variety store in Polo, Illinois, and his business did not yield anything more than a support. He owned one hundred and sixty acres of land in Dakota, which he sold about the year 1900 for $1000, and he had no other property. Lot 6, owned by Mrs. Rogers, was conveyed in 1895 to her husband's sister, and the sister conveyed it to him in 1899. Neither paid any consideration for the lot, and he sold it for $2200 or $2250. He took up the $600 mortgage from the bank, where his wife had placed it, and the mortgagor deeded the property to him to avoid a foreclosure, she releasing the mortgage in 1895 or 1896. Mrs. Rogers also transferred to her husband, in 1895, the one hundred and sixty acres of land in Dakota and forty acres in Nebraska. The judgment on the note was entered December 9, 1896, in the circuit court of Ogle county, where the defendants lived. Duncan B. Rogers sold the Dakota land for $2800 and the Nebraska land for $3000. The lots in Park Ridge addition were conveyed to him subject to the mortgages, and he paid the first mortgage of $4000 out of the proceeds of the Dakota and Nebraska land and appropriated to his own use the remainder of the proceeds and the proceeds of lot 6. He paid $2000 of the first mortgage in the spring of 1899 and the balance in November of that year. Mrs. Rogers released her second mortgage for $4000 to him, and there was never any consideration for the gifts or transfers by her to him. Whether he paid anything to West for the conveyance subject to the mortgages does not appear, but he testified that the property was worth $7500, and there were two mortgages on it amounting to $8000. His answer alleged that the property was not worth the amount of the mortgages, and it is a fair inference that he did not pay much, if anything, for it. There is some testimony that the transfers were

in consideration of services in attending to and settling the business of the wife, but it is too shadowy and uncertain to furnish any consideration. There was never any arrangement between them for payment for whatever services there were, and there is no presumption that she was to pay for them. The reading of the testimony convinces us that there was no consideration for the transfers, and Mrs. Rogers, when testifying, was not prepared to say that the land was not given to her husband as a present.

It is insisted that it was necessary for the complainants to show that when Mrs. Rogers gave the property to her husband she was insolvent or that the gifts made her unable to meet her obligations, and that the evidence did not establish that fact. It is clear that the money invested in stocks and loaned was mostly lost, and that after the transfers to the husband she had nothing left. The indebtedness for which the judgment was entered existed from September 14, 1892, and the transfers were made about the year 1895. The investments in stocks appear to have been made about 1891 and 1892, and the answer alleged that the corporations failed many years before the filing of the answer. The notes were all long past due when the transfers were made, and it sufficiently appears that they were then worthless. As a result of the gifts and transfers Mrs. Rogers became insolvent with the debt remaining unpaid, and her husband became the owner of all her property. The evidence tends to show a purpose on the part of the judgment debtor to transfer all her available property to her husband to defeat creditors.

It is urged that the decree was erroneous because Mr. Rogers did not derive title to the lots in Park Ridge addition from his wife. She was never interested in the premises except as the holder of a second mortgage, but, as before stated, the bill was not for the purpose of setting aside a fraudulent conveyance. The charge was

that the property ought to be subjected to the payment of her debt, and it appeared that the mortgage of $4000 on it was paid from the proceeds of land given the husband, and that she released to him her second mortgage upon it without payment. The form in which the fraudulent transfer of the property was accomplished is immaterial. The property given to the husband is directly traceable into this property, and in such a case it is proper to fasten the judgment on the property and subject the land to its satisfaction. There cannot be much doubt what the purpose of the transfers to the husband was, and more than sufficient property given to him to satisfy the judgment was applied to removing the encumbrance from the land to which he took title.

It is contended that the complainants, as assignees of the Second National Bank, could not file the bill in their own name. The assignment gave them the right to any equitable relief that the bank or the receiver could have had, and they were entitled to file the bill. (*Crawford* v. *Logan*, 97 Ill. 396.) Complainants paid but little for the judgment, but their rights cannot be limited or restricted by that fact.

It is also urged that the bill could not be filed without issuing a new execution in the name of the complainants, and that they were guilty of *laches.* The bill was not demurred to, and these questions were not raised in the circuit court in any manner, so far as we can discover, but we are of the opinion that it was not necessary to issue a new execution and that complainants were not guilty of *laches.*

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment reversed.*