WILLIAM V. MOORE *et al.* Appellees and Defendants in Error, *vs.* UNITED STATES ONE STAVE BARREL COMPANY *et al.*—(ESPY L. SMITH, Appellant, JOHN F. PALMER, Plaintiff in Error.)

*Opinion filed February 19, 1909.*

1. CONTRACTS—*when a contract creates no interest in patent.* A contract whereby the owner of a patent gives to another person an option to sell the patent within thirty days for $15,000 and agrees to pay such person $5000 for his services in case of sale, does not give such person the right to buy the patent himself nor create any ownership thereof in him which he can lawfully exchange for stock in a corporation organized to buy the patent.

2. CORPORATIONS—*when a stock subscription is not fully paid.* Where a person having an option to sell a patent for $15,000 organizes a corporation to purchase the patent and advances $5000 of the purchase money, the balance of which is paid by the corporation, an arrangement whereby such person receives stock of the face value of $50,000 in return for the $5000 and the giving of the benefit of the alleged option to the corporation amounts merely to an issue of stock at one-tenth its value, and such person is liable to creditors of the corporation for the amount unpaid.

3. SAME—*when owner of stock may be held for unpaid subscription.* A creditor of a corporation who receives in payment of his claim stock of the corporation of a face value ten times greater than his claim, with full knowledge that the stock was not paid for, the understanding being that he was to come into the corporation on an equal footing with the original subscribers as to stock holdings and cost thereof, is liable for the unpaid subscription to creditors of the corporation, and cannot insist that the liability of the original subscribers shall be exhausted before he is called upon to pay.

4. SAME—*stockholders are liable for unpaid subscription so long as creditors remain unpaid.* Stockholders in a corporation cannot escape their liability to pay the full amount due upon stock held by them so long as any creditor of the corporation remains unpaid.

5. SAME—*corporation cannot release stockholder from liability.* As to existing creditors of a corporation the corporation has no power to release a stockholder from liability to such creditors for his unpaid subscription by attempting to rescind the transaction whereby such stock was acquired and to restore the stockholder to his original status of a creditor of the corporation.

6. SAME—*when rescission of contract is not binding upon corporation.* The rescission of a contract between a stockholder and the corporation is not binding upon the corporation, where such rescission was effected by a resolution adopted by the vote of the stockholder himself and two other members of the board of directors who were under his domination and influence.

7. SAME—*assignee of judgment may enforce stock liability.* A judgment against a corporation is assignable in equity, and the assignee may enforce the collection of the judgment by any appropriate legal or equitable remedy which might have been employed by the judgment creditor, including a bill to enforce the liability of stockholders for unpaid subscriptions.

8. SAME—*what does not defeat complainant's right to enforce stock liability.* The fact that the title to a judgment recovered by a receiver against a corporation stands in the name of the purchaser at the receiver's sale instead of in the name of the person claiming to own the judgment does not defeat the latter's right to collect the judgment by a bill to enforce stock liability, where it is shown that the purchase was made with his money, at his request and for his benefit, and that he has ever since been the equitable owner of the judgment.

APPEAL from and writ of error to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GEO. A. DUPUY, Judge, presiding.

O'BRYAN & MARSHALL, for appellant Espy L. Smith.

HIRAM T. GILBERT, for plaintiff in error John F. Palmer.

WHITMAN & MILLER, (ORVILLE PECKHAM, and EDWIN WHITE MOORE, of counsel,) for appellees and defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Branch Appellate Court for the First District reversed a decree of the superior court of Cook county and remanded the cause, with directions to enter a decree in ac-

cordance with the recommendation of the master's report. A writ of error and two appeals have been prosecuted to review the judgment of the Appellate Court, and they have been consolidated.

The object of the original bill filed by William V. Moore was to enforce the liability of the appellant, Espy L. Smith, the plaintiff in error, John F. Palmer, and others, as stockholders of the United States One Stave Barrel Company, an Illinois corporation, to pay a judgment recovered by George A. True, receiver of the Frontier Iron Works, and assigned to the complainant. The First National Bank of Chicago by leave of court became a co-complainant and filed an intervening petition, alleging the recovery of a judgment against the barrel company for $11,304.86, adopting the averments of the original bill, and seeking to enforce the stockholders' liability for the payment of its judgment also.

The United States One Stave Barrel Company was organized under the laws of Illinois, the final certificate of the Secretary of State being issued on April 7, 1896. Its capital stock was $100,000, all of which was subscribed in equal amounts by Espy L. Smith, Lutellus Smith, Heylin T. Smith and James K. McGill. The 250 shares subscribed by McGill afterwards came to the possession of the plaintiff in error, Palmer, under the circumstances hereinafter stated. The master found that there were balances of $16,779.69 and $17,695.28, respectively, due from Espy L. Smith and Palmer on account of their stock. It is claimed on behalf of Smith that his stock was fully paid for, and on behalf of Palmer that he was a creditor of the corporation; that he took the stock, which was worthless, in payment of his debt; that such action was for the benefit of the company and its creditors, and he cannot, therefore, be held for the unpaid subscription. It is further claimed by Palmer that even if he should be held liable for any amount, the liability of Smith should first be exhausted before Palmer should be called on to pay.

First, in regard to Smith's stock. Louis Reed was the owner of two patents for improvements in machinery for manufacturing staves for barrels, covering all of the United States except Mississippi and Louisiana, and on March 7, 1896, entered into a written agreement with Lutellus Smith giving to him the sole right, option and privilege of selling said patents for $15,000 within thirty days. At the same time another agreement was entered into whereby Reed agreed to pay Smith $5000 for his services in case he sold the patents for $15,000. On March 24, 1896, a statement was filed in the office of the Secretary of State by James K. McGill, Espy L. Smith and Lutellus Smith, and a license was issued to them to open books for subscription to the capital stock of the United States One Stave Barrel Company, whose object was "to manufacture, buy and sell the barrel and the sheet of which what is known as the one stave barrel is made and any article to be made from said sheets." On April 3, before the issue of the final certificate of organization, the appellant, Espy L. Smith, and Lutellus Smith, who upon the organization of the company became, respectively, president and secretary thereof, entered into a contract in the name of the barrel company with Louis Reed for the assignment of the entire interest in the above mentioned patents except in the States of Mississippi and Louisiana, and paid him $5000 cash and gave him six notes executed in the name of the company, five for $1000 each and one for $5000. On July 29, 1896, the board of directors of the company adopted a resolution reciting the matters just stated in relation to the contract for the patents, expressly ratifying and adopting the contract as that of the company, ratifying the notes and assuming the payment thereof, and crediting the $5000 cash to Espy L. Smith and Lutellus Smith. The notes were afterward paid by the barrel company and the patents assigned to it by Reed. The resolution further recited that at the time of said transaction Lutellus Smith held an option for the pur-

chase of the interest of Reed in said patents, under which option the transaction was had and the company thereby given the benefit of the option, which option and the patents were of great value to the company and essential to the performance of the functions and purposes for which it was organized. The resolution then declared the sum of $45,000 to be "a fair, just and equitable sum to be paid to Lutellus Smith and his confrere, Espy L. Smith," for giving the company the benefit of the option acquired from Reed for the purchase of the patents, and ordered that the sum of $22,500 be severally credited to the said Lutellus Smith and Espy L. Smith as subscribers to the capital stock of the company and that the stock be issued accordingly. Four of the five directors of the company were present at the adoption of this resolution, two of whom were Espy L. Smith and Lutellus Smith, the president and secretary of the corporation. It is claimed that by this transaction the $50,000 of stock subscribed by Lutellus Smith and Espy L. Smith was paid in full.

The evidence shows that the only contract between Reed and the Smiths, or either of them, is that of March 7, whereby Reed gave Lutellus the option, not to purchase, but to sell the patents for $15,000, and agreed to pay him $5000 for doing so. This gave no interest in the patents and no right to buy them. The evidence shows clearly that the Smiths never had any ownership in the patents, any right to acquire an ownership in them or any connection with them which was capable of being transferred. It is manifest that the corporation was formed for the purpose of taking over these patents. Indeed, Espy L. Smith so testifies in so many words. It was intended that the company should pay for the patents and the Smiths receive half the capital stock and pay only the cash payment of $5000. The company not being fully organized before the authority to sell expired, the contract was made in the name of the company and afterward lawfully ratified by it. The barrel com-

pany paid the whole consideration for the assignment of the patents except the first payment of $5000, and the effect of the resolution of July 29, adopted by the votes of the interested parties themselves, was to direct the issue of half the stock of the corporation for ten per cent of its face value. The remaining ninety per cent is still unpaid and Espy L. Smith is liable for half of it.

Palmer's connection with the barrel company began by his lending it $2500 in August, 1896, for ninety days, with the agreement that instead of payment in cash he should have the option of receiving 250 shares of the capital stock of the company legally full paid and non-assessable. Before the maturity of the debt he determined to avail himself of the option. Thereupon the 250 shares of stock which had been originally subscribed for by James K. McGill, and which had never been issued, were surrendered by him, a certificate therefor was issued to Douglas Dyrenforth, and on the same day this certificate was canceled and a new certificate issued to Palmer for the 250 shares. Palmer at the time gave to Dyrenforth his check for $25,000, with which Dyrenforth paid the company for the stock, and this $25,000 was immediately returned to Palmer pursuant to an agreement with the company to that effect. It is not claimed that the stock was paid for by this arrangement, though Palmer testifies that the issue of the stock in this manner to Douglas Dyrenforth was made with the idea that the stock could thus be made fully paid for. As set forth in a written statement dated May 14, 1897, signed by Palmer and Espy L. Smith, the end sought was that Palmer should be put on the same footing as Espy L. Smith and Lutellus Smith "in original stock holdings and cost thereof, viz., twenty-five per cent of total stock at ten per cent of full value." The evidence satisfactorily shows that Palmer was thoroughly informed as to the business and condition of the corporation, its assets and liabilities; that he knew the stock issued to him was wholly unpaid for except to

the extent of his $2500 debt, and that it was the intention of all the parties that he and the two Smiths should stand on the same footing; that each should own one-fourth of the stock but only pay one-tenth of its face value. He purchased the stock, not because he was then trying to collect a debt, but because he considered it a desirable investment, and his position is not any different from that of the Smiths. The statute (Hurd's Stat. 1908, sec. 8, p. 526,) makes every stockholder and assignee of stock liable for the debts of the corporation to the extent of the amount unpaid on his stock, and such amount constitutes a fund to which creditors of the corporation have a right to resort for the satisfaction of their debts, without regard to when they accrued or the creditor's knowledge of the fact that the stock has not been paid for. (*Sprague* v. *National Bank of America,* 172 Ill. 149; *Root* v. *Sinnock,* 120 id. 350.) Stockholders cannot escape their liability to pay the full amount unpaid upon stock held by them so long as any creditor of the corporation remains unpaid. *Alling* v. *Wenzel,* 133 Ill. 264; *Coleman* v. *Howe,* 154 id. 458.

Some months after the stock was issued to Palmer an attempt was made to rescind the transaction whereby the stock was taken in payment of the $2500 debt and to restore Palmer to his status as a creditor of the corporation for that amount. The debts to each of complainants had then accrued. To the extent of the amount unpaid on his stock Palmer was then liable to them and the corporation had no power to release this liability. (*Alling* v. *Wenzel, supra; Zirkel* v. *Joliet Opera House Co.* 79 Ill. 334.) The resolution purporting to do so was adopted by the votes of three directors, of whom Palmer was one. The entire board of directors consisted of five members, of whom one was absent and one voted against the resolution. One of the other directors voting for the resolution was Douglas Dyrenforth, who owned no stock but had been elected a director at Palmer's request to represent him in his absence,

and the third was Espy L. Smith, who had made a written agreement that Palmer should have the voting power of Smith's stock, so that, the two owning a majority of the stock, Palmer should have the sole direction of the policy of the company so far as it could be controlled by the owner of the majority of the stock. Palmer thus dominated the board of directors, two of whom were subservient to his wishes, and their rescission of the contract induced by his influence was not binding on the corporation. *Adams* v. *Burke,* 201 Ill. 395.

The claim of Palmer that the Smiths should be first exhausted before he is called on to pay is without merit. He was not deceived. He was as fully informed as were the Smiths in regard to all the facts affecting the transaction. He received exactly what he expected to receive. The fact that he was mistaken as to the legal effect of the transaction or the liability he incurred gives him no equity against the Smiths. He bought the stock for ten cents on the dollar and knew the other ninety cents had not been paid. To that extent he is liable for the debts of the corporation, and there appears no reason for postponing his liability to that of the other stockholders.

It is contended that Moore's only interest being that of an assignee of a creditor, he cannot maintain this suit, because the right to impeach a transaction for fraud is not assignable in equity. The debt of the barrel company to the Frontier Iron Works was reduced to judgment by the receiver of the latter. This judgment was assignable in equity and was assigned to W. V. Moore. The assignment carried with it the right to enforce the collection of the judgment by any appropriate legal or equitable remedy which might have been employed by the judgment creditor. *Dimond* v. *Rogers,* 203 Ill. 464; *Crawford* v. *Logan,* 97 id. 396.

It is contended that William V. Moore had no title to the judgment but that the same was transferred to Darius D. Thorpe, the purchaser at the receiver's sale, and that he

has never transferred it. Even so, the evidence shows that Thorpe's purchase was made at the request and for the benefit of Moore, who paid all the purchase money and has ever since the receiver's sale been the equitable owner of the judgment.

It is insisted that the complainants have been guilty of *laches* which should bar them of relief. The bill seeks to enforce the liability of stockholders. The statutory period of limitation has not run against the action, and no equitable circumstances are shown as a reason why any shorter period should bar it. There is no basis for any claim of estoppel.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*