(No. 28184.—

MILLIE E. STOMBAUGH *et al.*, *vs.* HENRY H. MOREY *et al.*,
Appellants.—(J. ARTHUR CARR *et al.*, Appellees.)

*Opinion filed Nov. 22, 1944—Rehearing denied Jan. 15, 1945.*

JAMES G. ALLEN, of Decatur, for appellants.

EVANS & KUHLE, of Decatur, for appellee J. Arthur Carr; WEILEPP & WILSON, of Decatur, for other appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an appeal from a decree entered in a partition suit pending in the circuit court of Macon county. The issues on this appeal are as to the ownership of an undivided one-half of two tracts of farm land, one consisting of 100 acres, the other of 40 acres. The title controversy is between J. Arthur Carr, who was a defendant and counterclaimant in the partition suit, and Henry H. Morey, who was also a defendant and counterclaimant in said action. The suit was started by Millie E. Stombaugh, who, it is conceded by all parties, owns the other undivided one-half. The decree appealed from awards the title to the undivided one-half of both tracts to Carr. Helen D. Morey, one of the appellants, does not appear to have any

claim in the land, having been made a party because she was the wife of the other appellant. Carr will be referred to as appellee and Henry H. Morey as appellant.

Both tracts were formerly owned by Edward F. Carr, the father of appellee. He died in 1919 seized of said tracts, and left a will, the provisions of which gave to his widow, Mary Carr, a life estate. The remainder was devised under the following provision: "At her [Mary Carr's] death, it is my will that said farm lands be the property in fee of my daughter Millie Stombaugh and my son J. Arthur Carr and should either of them precede my wife in death his or her share shall go to their bodily heirs and if leaving no bodily heirs in that event to the survivor of them."

Appellee was residing on the 40-acre tract when his father died, and continued as a tenant of Mary Carr until her death, November 18, 1942. His rights in said tract are as a tenant and by virtue of said will, and the controversy is as to whether he lost such interest by reason of a levy and execution sale in which said interest was sold and deeded to appellant.

The facts pertinent to the issues raised on the sheriff's deed are as follows: In 1931-32, appellee owed the Farmers State Bank various amounts evidenced by three promissory notes for $1100, $520 and $210, respectively. Some time after the notes were executed, the Farmers State Bank became indebted to the National Bank of Decatur for $25,000 and the two notes for the larger amounts were included as a part of the collateral pledged to secure such indebtedness. The Farmers bank retained the note of the smaller amount and when a liquidating receiver was appointed for said bank, it passed into his custody as a part of the assets of the insolvent bank. The National bank filed a claim for its indebtedness in the receivership proceeding and while the claim was pending in the receivership matter, the National bank, on July 26, 1933, secured a

judgment against appellee by confession on the two notes held by it as collateral. The judgment was for $2012.30. No question is raised as to the National bank's authority under the pledge agreement to sue for and recover such judgment. The same day that the National bank judgment was taken, the receiver of the Farmers bank secured a judgment for $258.82 against appellee on the small note. Executions were duly issued on both judgments. Some time prior to September 30, 1935, the exact date not being shown, the receiver of the Farmers bank paid the claim filed by the National bank. There was no formal assignment of the National bank's judgment to the receiver.

In July, 1935, appellant opened negotiations with the receiver of the Farmers bank for the purchase of the two judgments against appellee. Terms were agreed upon which were approved by the Auditor and an order was entered in the receivership proceeding directing the receiver to sell the two judgments to appellant for $400. The order designated the proceeding as No. 29, was in the usual form, and directed the receiver "to make proper assignments." After appellant had paid the receiver $400 for said judgments, a written assignment was executed by the receiver conveying the small judgment to appellant. On September 30, 1935, the National Bank of Decatur executed an assignment transferring the larger judgment to appellant, which assignment contained the recital that it was assigned to appellant "for value received and pursuant to order of the Circuit Court of Macon county entered respecting Receiver's Petition No. 29," etc.

On October 10, 1935, appellant caused an execution to issue on the larger judgment. On October 23, notice of issuance of the execution was given appellee. A certificate of levy was filed November 13, 1935, and, after the giving of notice, a sale was had on December 14, 1935. The levy was on "all interest of J. Arthur Carr * * *." Appellant bid $2100 for appellee's interest in both of said tracts

and, that being the highest bid, it was struck off to him. On December 15, 1936, appellant caused an execution to issue on the smaller judgment, and, December 16, effected a redemption from the first sale. On January 9, 1937, the premises were resold on the second execution pursuant to the redemption and "all interest of J. Arthur Carr" was sold to appellant on his bid of $2253.32. Said bid equaled the total paid for redemption, plus interest and costs. On January 9, 1937, the sheriff executed his deed conveying "all interest of J. Arthur Carr" in both of said tracts to appellant.

In February, 1939, appellant filed a suit against appellee based upon the deficit remaining in each of said judgments. Personal service was had but appellee did not appear. A default judgment was entered in the sum of $604.65. Thereafter, appellee effected a settlement of this judgment by the payment of $500.

Appellant contends that he became the owner of the two judgments by virtue of his purchase of the same from the receiver of the Farmers bank and the subsequent assignment of the one by such receiver and of the assignment of the other by the National bank. Appellee contends that the transaction with the receiver as to the larger judgment and the subsequent assignment of the same to appellant by the National bank were ineffectual to pass title. From this, it is argued that the sale and execution on the larger judgment was void. No attack is made upon the validity of the assignment of the smaller judgment but inasmuch as the sale under it is dependent on a redemption from the larger judgment, it follows that if the sale and proceeding as to the first judgment are a nullity, the proceeding on the smaller must also fall.

In support of his theory, appellee contends that when the receiver paid the debt owed by the Farmers bank to the National bank, the latter bank had no further interest in the collateral and that the judgment previously taken by

the National bank against appellee thereby became a nullity. We cannot agree with such contention. It is not questioned but what the National bank had the authority under the pledge agreement with the Farmers bank to reduce the two notes to judgment. Having done so, the subsequent payment of the principal debt did not serve to destroy any rights or advantages the National bank acquired against appellee by reason of the judgments. The notes were merged into the judgment and the National bank's right to retain the judgment as against the receiver was terminated by the payment of the principal debt, but that was a matter between the National bank and the receiver of the Farmers bank. It was no concern of appellee so long as he was not required to pay his debt more than once. The effect would be that the National bank would hold the bare legal title to the judgment in trust for the receiver. Had appellee paid the amount of the judgment to the National bank, there is no doubt but what such payment would have discharged him from the obligation as against any claims the receiver might make by virtue of such judgment. 49 C. J. sec. 177-180, p. 970.

The further question is presented as to whether the assignment of the judgment by the National bank to appellant instead of by the receiver of the Farmers bank was sufficient to convey all interest therein to appellant. At common law, a judgment was not assignable so as to vest the legal title in the assignee and there is no statute which gives an assignment such effect. But courts of equity have long disregarded the common-law rule and have protected and enforced such assignments in equity, if made *bona fide* and for a valuable consideration. (*Pearson* v. *Luecht,* 199 Ill. 475.) In an equitable action in *Moore* v. *United States One Stave Barrel Co.* 238 Ill. 544, it was said: "This judgment was assignable in equity * * *. The assignment carried with it the right to enforce the collection of the judgment by any appropriate legal or

equitable remedy which might have been employed by the judgment creditor." To the same effect are *Dimond* v. *Rogers,* 203 Ill. 464, and *Crawford* v. *Logan,* 97 Ill. 396.

In this case the receiver was the beneficial owner of the judgment and the sale of the judgment and its transfer was on that basis. The payment by appellant of the purchase price to the receiver and the steps taken to transfer the judgment to him are sufficient to constitute an assignment enforcible in a court of equity.

The appellee further contends that he had a homestead interest in the forty acres which was not set off before the sale and that since both tracts were sold *en masse,* such irregularity renders the sale void. It is also urged that if the failure to set off the homestead did not render the sale void, it was an irregularity which, together with inadequacy of price, requires the cancellation of the deed and a setting aside of the sale. In this connection, it should be noted that appellee tendered the full amount paid at the execution sales plus interest, which, with the $500 previously paid to satisfy the judgment for deficiencies, would equal the total of his indebtedness evidenced by the three notes.

The will of Edward F. Carr devised a life estate in the lands in question to Mary Carr and appellee was devised an undivided one-half in the remainder in fee subject to be divested if he should die within the lifetime of the life tenant. If he did die within such time, such undivided one-half then passed by executory devise. Appellee had a base or determinable fee. (*Smith* v. *Shepard,* 370 Ill. 491; *Hasemeier* v. *Welke,* 309 Ill. 460; *Warrington* v. *Chester,* 294 Ill. 524.) It was a vested estate and subject to execution and sale by his judgment creditors. The rights acquired by such a sale would be lost if the event which defeated the fee should occur.

Appellee's interest in the 40-acre tract was derived from two separate sources. He was in possession as a

tenant of his mother and, by virtue of his father's will, he had a base or determinable fee in an undivided one-half of the remainder. He could not have a homestead interest in the 40 acres by reason of his ownership of a base fee for the reason that such estate did not give him the right to possession during the life of the life tenant. It is well settled that the provisions of law in reference to a homestead do not apply to a remainder dependent upon a life estate. *Brokaw* v. *Ogle,* 170 Ill. 115.

The terms of the lease by which appellee occupied the premises as a tenant of his mother are not clear, but, for purposes here, it may be assumed that they were of such a character as to support a homestead exemption as announced in *Daughters* v. *Christy,* 223 Ill. 612; *Watson* v. *Saxer,* 102 Ill. 585, and other cases.

It may also be assumed that the levy on "all the interest of J. Arthur Carr" included all interest he had as a tenant in the 40 acres as well as all interest he had acquired under his father's will. The failure to set off the homestead in his leasehold estate did not render the sale void in equity. The execution sale was valid as to the excess over $1,000. After the sale without recognition of his homestead interests, appellee could have enforced it by an action in equity. The homestead would have been set off or he would have been paid $1000, dependent upon the circumstances of the case. (*Krupp* v. *Brand,* 200 Ill. 403; *Mayne* v. *Drury,* 295 Ill. 533.) The fact that the homestead was not set off in the leasehold estate is of no consequence now. Appellee remained in possession of the 40 acres as a tenant after the deed was given in 1935 until the life tenant died in November, 1942. His right to a homestead interest under his lease expired when the lease was ended by the death of the life tenant. On the death of the life tenant, the interest which appellee had formerly owned in the remainder became a fee absolute but such interest had been sold and conveyed at sheriff's sale to appellant. By virtue

of such sale and deed, appellant, upon the death of the life tenant, became entitled to the possession and enjoyment of the undivided one-half as a tenant in common. Appellee lost all right, including any right of homestead, therein.

Appellee invokes the principle that where lands are sold at a judicial sale for an inadequate price, a court of equity will seize upon any irregularities occurring in the sale and set the sale aside and permit the judgment debtor to redeem his property. There is ample precedent to support such principle, (*Block* v. *Hooper,* 318 Ill. 182; *McDaniel* v. *Wetzel,* 264 Ill. 212,) but before the rule may be applied, factual requirements must be met.

The only irregularity pointed out is the one that has been considered in reference to the failure of the sheriff to have the homestead set off in appellee's leasehold estate. Whether such failure would be a sufficient irregularity to support the application of the principle need not be determined for there is no evidence which proves that appellee's interest sold for an inadequate price. The evidence shows that after the life tenant died in November, 1942, the value of a one-half interest in the two tracts was $12,000 to $14,000, but the adequacy of the sale price cannot be tested by such values. The sales were held more than five years prior to the death of the life tenant. At the time of the sale, appellee's interest in the remainder was a base or determinable fee. His interest would be divested if he should predecease the the life tenant. The value of an undivided one-half in the two tracts at the time of the sale was about $6800. This value was fixed by the witnesses without regard to the fact that the one-half interest was subject to the life estate of Mary Carr, and that appellee's interest at that time was only a base or determinable fee. Appellant bid $2253.32 for such interest. Under such circumstances, it cannot be said that the evidence warrants a finding that appellee's interest sold for an in-

adequate price. It is significant that from the time of the sale in January, 1937, to the date of the death of the life tenant in November, 1942, appellee never considered the title he had was of sufficient stability to warrant a redemption from the sale.

Appellant's final contention is that if the decree should be reversed, the cause should proceed under his counterclaim. The complaint filed by Millie Stombaugh set forth the judgment and proceeding by which appellant acquired his deed and alleged that he was the owner of all interest devised to J. Arthur Carr. The contest arose between appellee and appellant by virtue of the counterclaims they filed. Attention is also called to discrepancies in reference to certain unreleased mortgages. These discrepancies as to interests are not sufficient to deprive plaintiff Stombaugh from proceeding with the partition under her complaint.

For the reasons assigned, the decree of the circuit court is reversed and the cause remanded, with directions to proceed in accordance with the views expressed.

*Reversed and remanded, with directions.*