Peter Venturelli and James Venturelli, Copartners Trading as Oglesby Appliance Company, Plaintiffs-Appellants, v. Lawrence Trovero, Sr. et al.; Joseph Smith et al.; and S. P. Miller, Trading as Labor News Publishing Company, Defendants-Appellees.

Gen. No. 10,555.

Opinion filed April 1, 1952. Released for publication May 1, 1952.

JACK TRAGER, of Ottawa, SAMUEL SAXON, of Plainfield, and RAYMOND J. HARVEY, of Joliet, for appellants.

LENNON, HARRINGTON, CASSIDAY & DUNN, of Joliet, and CARR, CARR & CARR, of Ottawa, for appellees.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Peter Venturelli and James Venturelli, copartners doing business as Oglesby Appliance Company, plaintiffs-appellants filed their suit in equity in the circuit court of La Salle county against Lawrence Trovero, Sr. and Joseph Smith, both as individual members and as Secretary-Treasurer and Business Agent, respectively, of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers, Local Union No. 159, an unincorporated association; and S. P. Miller, doing business as the Labor News Publishing Company, all defendants-appellees. The complaint alleged in substance: that the plaintiffs are engaged in operating a retail electrical appliance store in Oglesby, Illinois; that the defendant S. P. Miller is the owner of a newspaper known as *Labor News,* which is published and circulated in various cities and villages in La Salle county, Illinois; that in 1947 the defendants Trovero and Smith called upon the plaintiffs and requested that they become members of the union above mentioned; that the said defendants told the plaintiffs that other small business firms in Oglesby had joined or were joining the Local Union No. 159; that the plaintiffs joined the union but found that other firms in Oglesby were not members or planning to become members.

The complaint further alleged: that the plaintiffs stopped paying dues to the union in January 1948; that in October 1949, Trovero and Smith called upon the plaintiffs and told them that unless they paid their

delinquent dues and renewed their membership, they would be placed upon an unfair list of the union; and that the plaintiffs did not renew their membership. The complaint further averred that the defendants, conspiring together, contrary to the law declared a boycott and black list on the plaintiffs' business by having published in the *Labor News,* owned by defendant Miller, libelous publications designated and identified in the complaint as plaintiffs' exhibits A, B, and C. The publications, which came out in June and September of 1950, were entitled "We Do Not Patronize." They listed the plaintiff—"Oglesby Appliance Company"—as having difficulty with the "Teamsters Local No. 159." The articles so published further stated:

"From time to time other names will appear on this list, but only after labor has exhausted every effort to bring about some understanding with the individual or firm in question. We urge everyone, who is contacted by the Business Agents or Union Representatives of the various unions, to give serious consideration to their propositions, before running the risk of having their names placed on the 'We Do Not Patronize' list."

The complaint further averred: that defendants are continuing to declare a boycott on plaintiffs' business; that the said publications and statements were untrue and injured the reputation and business of the plaintiffs; that plaintiffs seek damages against the defendants; that the defendants be enjoined temporarily and permanently from boycotting or black-listing the plaintiffs' business; that the defendants be enjoined from interfering or attempting to hinder the plaintiffs from carrying on their business; and that they be enjoined from libeling the plaintiffs' business.

The defendants filed a motion to dismiss the complaint, and after a hearing on the motion, the chan-

cellor dismissed the suit for want of equity. Plaintiffs have appealed from this decretal order.

██ Appellees urged by their motion that the case should be transferred by this court to the Supreme Court as a constitutional question concerning the right of free speech is involved. This motion was taken with the case. This motion was not urged in the trial court. It is our opinion that the injunction sought should not have been issued regardless of the constitutional question and the motion to transfer the case to the Supreme Court is denied. (*Compass Sales Corp. v. National Mineral Co.*, 388 Ill. 281.)

██ The rule of law appears to be well settled in this State that a court of equity will not enjoin the publication of a libel or slander. (*Lietzman v. Radio Broadcasting Station WCFL*, 282 Ill. App. 203; *Montgomery Ward & Co., Inc. v. United Retail, Wholesale & Department Store Employees of America*, 330 Ill. App. 49; *Montgomery Ward & Co., Inc. v. United Retail, Wholesale, & Department Store Employees of America*, 400 Ill. 38.)

In the *Lietzman* case it is alleged by the plaintiffs that the defendants broadcasted from time to time that the plaintiffs' dental parlors were nonunion and would not permit collective bargaining, and (quote) "We would suggest that you patronize other dental parlors for your necessary dental work if you are interested in fair, impartial treatment for the working man." The chancellor held that the complaint did not state a cause of action and this was affirmed by the Appellate Court. The Appellate Court says on page 210 of the opinion:

"In the *American Malting* case, *supra*, where the law on the question is exhaustively reviewed, the court said at pp. 354-356:

432

" 'For 150 years it has been understood in England that equity had no jurisdiction to enjoin a libel, and the power of the courts of that country to do so rests upon statute.

" 'In the United States a like view of the matter has been taken. In Pomeroy's Equity Jurisprudence, vol. 6, sec. 629, it is laid down that:

" ' "Equity will not restrain by injunction the threatened publication of a libel, as such, however great the injury to property may be. This is the universal rule in the United States and was formerly the rule in England. The present rule in England rests on statute." ' "

In the *Montgomery Ward* cases the employer, Montgomery Ward and Co., sought to obtain an injunction against various labor unions, the defendants in the suit, to enjoin them from circulating and publishing various libelous writing which the employer alleged were untrue and caused great injury to his business. The chancellor issued an injunction as prayed and the case was appealed to the Appellate Court, as above cited, which court reversed the chancellor and held that the plaintiff was not entitled to an injunction. The cause was then appealed to the Supreme Court, above cited, and that court likewise held that the plaintiff was not entitled to the injunction. The Appellate Court wrote a long and scholarly opinion which was in effect adopted by the Supreme Court after they had analyzed it and reviewed many authorities. These cases hold that in the absence of showing violence an injunction is not available to prevent actual or threatened publication of a libel by employees regardless of its untruth or the motive of the employees. The libel will not be enjoined and the employer's only relief is an action at law. The court in these cases held that the Constitution of the United States and the Constitu-

tion of this State, both guaranteeing free speech, prevented relief by injunction.

The facts of the above three cases are nearly parallel to the facts in the instant case. In the *Lietzman* case the court says on page 216:

"In discussing the right of a union or its members to endeavor by peaceful persuasion to induce members of the same craft to join their organization, and how far they may go in presenting their cause, in *Beck vs. Railway Teamsters' Protective Union, supra,* the court said at pp. 516, 517:

" 'So, also, the laborers have the right to fix a price upon their labor, and to refuse to work unless that price is obtained. Singly, or in combination, they have their right. They may organize in order to improve their condition and secure better wages. They may use persuasion to induce men to join their organization, or to refuse to work except for an established wage. They may present their cause to the public in newspapers or circulars, in a peaceable way, and with no attempt at coercion. If the effect in such case is ruin to the employer, it is damnum absque injuria, for they have only exercised their legal rights.'

"As to the union's right in a labor dispute to peaceably suggest and advise that an employer be not patronized, Justice Van Orsdel in his concurring opinion in *American Federation of Labor vs. Buck's Stove & Range Co., supra,* said at pp. 116, 121-123:

" 'Applying the same principle, I conceive it to be the privilege of one man, or a number of men, to individually conclude not to patronize a certain person or corporation. It is also the right of these men to agree together, and to advise others, not to extend such patronage. That advice may be given by direct communication or through the medium of the press, so long as it is neither in the nature of coercion or a threat. . . .' "

434

As in the above case the facts in the instant case showed no coercion, threat, or fear of violence.

The United States Supreme Court in the *United States v. Hutcheson,* 312 U. S. 219, 85 L. Ed. 788, 61 S. Ct. 463, held that the publication by labor unions of a ''We Do Not Patronize'' list is lawful and that its publication, unaccompanied by violence, is an exercise of the right of free speech guaranteed by the First Amendment to the Constitution of the United States.

The law as above announced does not entitle the plaintiffs to the injunction sought in a court of equity.

Appellants also urge that, if injunctional relief was not awarded them, the chancellor should have heard the case on the complaint on the law side of the court. This position is not tenable for the reason that assuming that the complaint stated a cause of action for libel at law, the instant case was primarily an equity suit, and it was so designated by the pleadings. It is true, under the well established principles in equity, that if the trial court had jurisdiction in equity, then the court may give the party full relief even though it is necessary to determine his rights at law. Here the equity suit completely failed, and the law is well settled that if the principal ground of jurisdiction in equity fails, then the equity court has no authority to determine ancillary rights at law of the parties. To do so would deprive the defendants of a right of jury trial. The fact that the Civil Practice Act has abolished distinctions between actions at law and equity has not changed this rule. (*Stombaugh v. Morey,* 388 Ill. 392; *Turek v. Mahoney,* 407 Ill. 476.)

For the above reasons it appears to us that the chancellor was correct in dismissing the suit for want of equity, and his decretal order was correct and is affirmed.

*Decree affirmed.*